FILED
3:01 pm, 5/3/11
Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
|     KIRBY D. PETERSON, | ) | Case No. 09-20566 |
| | ) | CHAPTER 11 |
|         Debtor. | ) | |
| In re | ) | |
| | ) | |
|     MELANIE M. PETERSON, | ) | Case No. 09-20567 |
| | ) | CHAPTER 11 |
|         Debtor. | ) | |

**MEMORANDUM OPINION ON APPLICATION FOR COMPENSATION FOR ATTORNEY FEES AND COSTS, ENTITLED "BILL OF FEES AND COSTS" FILED BY APPLICANT KEN MCCARTNEY OF THE LAW OFFICE OF KEN MCCARTNEY, P.C.**

These matters came before the court on the applications for compensation requested by Ken McCartney of the Law Office of Ken McCartney, P.C. ("Applicant"), entitled Bill of Fees and Costs ("Application") and the Petitioning Creditors' objection. The parties were represented as stated on the record. The court held an evidentiary hearing on October 13, 2010.

These cases have been consolidated for the purposes of this Memorandum and Order. For the reasons state below, the court shall grant the Applications in the total amount of $13,300.10.

**Jurisdiction**

The court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2). The application is brought before the court under 11 U.S.C. § 303(i).[1]

**Background**

These involuntary bankruptcy cases were filed as a result of two civil proceedings that were pending in the Ninth Judicial District, Fremont County, Wyoming between Wyo. Country Builders ("WCB") and Melanie and Kirby Peterson ("Debtors"). To say the least, the relationship between the parties has become extremely contentious. The state civil actions were scheduled for trial in the state district court in September 2009.

WCB filed the original involuntary petition on June 17, 2009. There was an immediate flurry of motions and pleadings filed on both sides.[2] The court scheduled and

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

[2] Motion for Protective Order, filed July 15, 2009; Response to Involuntary Petition filed July 15, 2009; Motion to Strike Debtor Melanie Peterson and Debtor Kirby Peterson's Response to Involuntary Petition filed August 17, 2009; Motion for Order of Stay filed August 19, 2009; Objection to Debtors Melanie Peterson and Kirby Peterson's Motions for Protective bond filed August 19, 2009; Motion to Expedite Hearing filed August 20, 2009; Second Motion to Expedite Hearing filed August 26, 2009; (Both Motions to Expedite Hearings were filed at a time that the alleged Debtors filed a motion to continue the evidentiary hearing); Motion for Protective Order on Interrogatories filed September 21, 2009; Amended Involuntary Petition filed September 11, 2009; Motion for Summary Judgment filed September 21, 2009; Motion to Bifurcate Hearings on the Merit and on the Respondent's Request for a Protective Bond filed September 21, 2009; Notice of Assertion of Attorney Client Privilege in all Information Demanded by the Certain Subpoena Duces Tecum of September 17, 2009 to Attorney David B. Hooper filed September 21, 2009; Objection to Motion for Protective Order on Production of Documents filed September 30, 2009; Motion to Compel All Information Demanded by the Certain Subpoena Duces Tecum of September 17, 2009 to Attorney David B. Hooper filed October 1, 2009; Objection to Motion to Bifurcate Hearings on the Merits and on the Respondent's Request for a Protect Bond filed October 1, 2009; Response to Motion for Summary

rescheduled the evidentiary hearing on the involuntary petitions numerous times at the requests of both parties.[3] The court, in the interest of judicial economy, combined the hearings on the pending motions: (1) Petitioner's Motion to Strike Exhibits; (2) WCB's Motion to Strike Debtor's Response to Involuntary Petition; (3) Debtor's Motion for Protective Bond; and, (4) the evidentiary hearings on the Involuntary Petitions. At the conclusion, the hearing on the Involuntary Petitions were continued. The Debtors refused to disclose their creditors as required under the Fed. R. Bankr. P. 1002 prior to the hearing. The court ordered the Debtors to comply with the requirements of the Bankruptcy Code and Rules. Additionally, the Petitioning Creditors were ordered to reschedule the depositions and give timely notice to the Debtors. The evidentiary hearings were subsequently concluded on January 11, 2010. The court entered its Memorandum Opinion and Order Dismissing Involuntary Petition in each case on February 5, 2010.

---

Judgment, Petitioners' Objection as to Form and Response to Debtors' Second Motion for Summary Judgment and Motion to Strike Debtor's Affidavits Submitted Therewith filed October 1, 2009; Notice to take Deposition of Petitioning Creditors filed October 23, 2009; Emergency Motion for Protective Order filed on October 28, 2009; Motion to Quash a Subpoena Duces Tecum filed October 30, 2009; Objection to Deposition Testimony filed November 3, 2009; Motion to Expedite Hearing filed November 4, 2009; Motion to Strike Debtor's Exhibits filed November 4, 2009; Motion for Clerk's Entry of Default filed November 6, 2009 Response to Motion for Clerk's Entry of Default, filed November 9, 2009.

[3] The evidentiary hearing was originally scheduled for August 20, 2009. WCB requested a continuance and the court rescheduled the hearing to September 9, 2009. The alleged Debtors requested a continuance and the court rescheduled to August 27, 2009. WCB requested a continuance and the court rescheduled the evidentiary hearing to November 11, 2009. The court, sua sponte, rescheduled pending motions and the evidentiary hearing to November 9, 2009.

The Applicant filed his requests for fees on April 21, 2010. The Petitioning Creditors subsequently requested a hearing and filed an extensive objection. The Application was set for a hearing on October 13, 2010.

**Discussion**

Under § 303 (i),

> "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment -
> (1) against the petitioners and in favor of the debtor for –
>    (A)  costs; or
>    (B)  a reasonable attorney's fees; or
> (2) against any petitioner that filed the petition in bad faith, for –
>    (A)  any damages proximately caused by such filing; or
>    (B)  punitive damages."

The plain language of the statute presents two prerequisites for an award of fees or costs under §303(i)(1). First, a court must have dismissed the petition on some ground other than consent by the parties. Secondly, the debtor must not have waived its right to recovery under the statute.[4] Courts have held that this section is permissive, leaving the assessment of fees, costs and damages to the exclusive discretion of the court.[5] Courts have construed and applied §303(i)(1) as a "fee shifting" statute, designed to transfer the cost of litigating the action to the nonmoving party.[6]

---

[4] *In re Higgins*, 379 F.3d 708 (9th Cir. 2004).

[5] *Miller* at 58, citing *In re Silverman* 230 B.R. 46, 50 (Bankr. D.N.J. 1998) (and cases cited therein).

[6] *In re Miller*, Case No. 10-11541, 2011 Bankr. LEXIS 155 (Bankr. N.D. Okla., Jan. 18, 2011).

Page 4

When determining whether to award costs and fees, the court examines the totality of the circumstances. The following factors have been found to be relevant to the evaluation of an involuntary debtor's request for fees: (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the action taken by the petitioning creditors; (4) the motivation and objective behind filing the petition, and (5) other material factors the court deems relevant.[7] Courts have held conflicting positions in determining whether all petitioning creditors are subject to §303(i) and may be held to pay the fees, costs, and damages or as the Ninth Circuit Bankruptcy Appellate Panel allowed, a debtor may seek costs and fees from fewer than all petitioners.[8]

An award of cost and fees does not require a showing of bad faith.[9] In fact, bad faith is not a prerequisite to awarding attorney's fees and costs under §303(i)(1) as § 303(i)(2) explicitly provides for damages, including punitive damages, against a petitioner that files an involuntary petition in bad faith.[10] As this court did not find that the petition was filed in bad faith, there is not a basis for an award of damages.

---

[7] *In re Hentges*, 351 B.R. 758, (Bankr. N.D. Okla. 2006).

[8] *In re Maple-Whitworth*, 556 F.3d 742 (9th Cir. 2009), opinion corrected, 559 F.3d 917 (9th Cir. 2009). (held that court may require certain petitioning creditors to pay the debtor his attorney's fees and costs without imposing liability on all petitioning creditors.) *In re Kidwell*, 158 B.R. 203 (Bankr. E.D. Cal. 1993). (Held that all petitioning creditors, regardless of the viability of their claims against the debtor may be held to pay fees, costs and damages.)

[9] *Miller, supra.*

[10] *Higgins* at 706.

Page 5

The United States Court of Appeals for the Ninth Circuit stated,

> "the court does not abandon the premise that any petitioning creditor in an involuntary case should expect to pay the debtor's attorney's fees and costs if the petition is dismissed. When an involuntary petition is dismissed on some ground other than consent of the parties and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's fees and costs raises a rebuttable presumption that reasonable fees and costs are authorized. This presumption helps reinforce the idea that the filing an involuntary petition should not be lightly undertaken and will serve to discourage inappropriate and frivolous filings.[11]

The Debtors' cases before this court, were dismissed on grounds other than by the consent of the parties. The court dismissed the cases after concluding that the Debtors had more than 12 creditors, and the three-petitioning-creditors-standing requirement had not been met. The Debtors did not waive the right to recovery of attorney's fees and costs. Therefore, there is a presumption that fees and costs are authorized.

The Petitioning Creditors filed an extensive objection to the Application. Therefore, the court next examines the totality of the circumstances to determine if an award of fees and costs is warranted.

A.  <u>Duplicate filing for the separate bankruptcy cases for Melanie Peterson and Kirby Peterson.</u>

Throughout the proceedings, the Debtors alleged that maintaining two separate cases was burdensome. The court's review of the law indicated that an involuntary case

---

[11] *Higgins* at 707.

may not be commenced against a husband and wife, jointly, since only a "person" may be the subject of an involuntary case. However, involuntary cases brought separately against each spouse may be jointly administered.[12] During the hearing on the application for compensation, counsel for the Petitioning Creditors reported the actions taken in October 2009 of contacting Debtors' counsel proposing to consolidate the cases. The Petitioning Creditors declined and have submitted an application for each case. A Bill of Fees and Costs for the case of In re Melanie Peterson, Case No. 09-20567 was filed requesting the total amount of $24,775.75. Additionally, the Petitioning Creditors submitted a Bill of Fees and Costs for the case of In re Kirby Peterson, Case No. 09-20566 in the total amount of $24,775.75.

It appears to the court that the details of each Application are the same, while the hearings for the cases, have been held jointly and the witnesses appearing and testifying only once. The differences in the pleadings amount to the modification of headings to reflect the separate cases. The court finds that there were opportunities to reduce the work of filing duplicate filings in the separate cases, which Debtors' counsel failed or refused to consider. In addition to the opportunity to consolidate, these cases could easily have been jointly administered, which in effect is what the court did when scheduling and holding hearings on the two cases. The court finds that duplicate requests for fees and services for the two cases is disallowed.

---

[12] Am. Jur. 2d Section 1006 on Bankruptcy.

B.    The totality of the circumstances test for awarding fees and costs

(1)    The merits of the involuntary petition

The court found that the Petitioning Creditors did not meet the standing requirements to grant the Involuntary Petitions.

(2)    The role of any improper conduct on the part of the alleged debtor

As stated, the court could not conclude the evidentiary hearings on the Involuntary petition in November as the Debtors refused to comply with the requirements of the Bankruptcy Code and Rules. The Debtors alleged they were concerned about the effect of the release of that information and sought "guidance" from the court. The Debtors even attempted to waive that requirement. However, as the court found in the Memorandum Opinion, this was a jurisdictional issue and not waiveable. The court finds that the Debtors' refusal to comply with the statutory requirements contributed to the costs of litigating this matter and the delay in the ability of the court to resolve it.

(3)    The reasonableness of the actions taken by the petitioning creditors

The court found that the Petitioning Creditors' actions in attempting to use deposition testimony that was obtained without the participation of the Debtors' counsel unreasonable and ordered that the depositions be rescheduled and retaken, allowing for the Debtors' counsel to participate. The court finds that Petitioning Creditors' rush to get the depositions contributed to the additional costs of this case.

Page 8

Additionally, the court is concerned with the "game-playing" near the end of the case. Allegedly, Mr. Lookingbill assigned his interest in the action to his niece, who was also working for the Petitioning Creditors' counsel. The court was never provided documentation regarding this assignment and was left wondering who was the real party pursuing these involuntary cases.

(4) <u>The motivation and objective behind filing the petition</u>

The initial petitioning creditor, WCB, was engaged in extensive litigation in the state district court with Melanie and Kirby Peterson which included claims and cross claims against WCB and Tim Lookingbill ("Lookingbill"), individually. The initial complaint was filed on June 15, 2007 in the Ninth Judicial District Court of Fremont County, Wyoming. The matter was scheduled for trial in September 2009. WCB filed the initial involuntary petitions on June 17, 2009.

Mr. Lookingbill, managing member of WCB, testified that he was concerned that the Debtors were transferring and depleting their assets in the event that a judgment was entered against them. As stated in this court's Order on Debtor's Request for Sanctions, the court found that....the allegations and factual contention had evidentiary support or were likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Additionally, the Petitioning Creditors' expert witness, Algirdas M. Liepas, Esq. admitted under cross examination, that concerns of preferential transfers are legitimate reasons for initiating an involuntary bankruptcy.

5. <u>Other material factors the court deems relevant</u>

The court in *Miller*, after concluding that reasonable attorney's fees and costs would be considered, advised counsel "to be reasonable in his requests. An award of fees, expenses...under §303(b)(1) is discretionary. The potential for such an award is not to be confused with the holding of a winning lottery ticket."[13]

After reviewing the Application's detail, the court's own analysis finds the following:

1. Expenses for the professional services of Gregory Dyekman, as counsel for Frank Peasley. Mr. Peasley was a witness testifying to the business relationship with Melanie Peterson. The record does not show that an application to retain Mr. Dyekman was approved by the court. These fees are disallowed.

2. Expenses for the professional services of Dave Hooper. The record does not reflect that an application to retain Mr. Hooper in these bankruptcy cases was approved by the court. These fees are disallowed.

3. Expenses for Mr. Frank Peasley. Mr. Peasley testified to the business relationship with Melanie Peterson and Kirby Peterson. The record does not reflect that an application to retain Mr. Peasley was approved by the

---

[13] *Miller* at 67.

       court, nor was he testifying as an expert witness. The request for fees is disallowed.

4.    The court's review of the historical rate charged by the Applicant for the last year, shows his rate for the complicated Chapter 11 cases ranged from $185.00 to $225.00 per hour. Also, Applicant charged for paralegal services at the rate of $75.00 per hour. In the cases before the court, the Applicant billed his services at the rate of $265.00 per hour and did not indicate that any of the services were performed by a paralegal.

   a.    The court, based upon the Applicant's expertise and knowledge, allows the hourly rate in these cases to be commensurate with rate that has generally been requested by this Applicant in the amount $225.00.

   b.    The court's review of the Application's detail shows entries [4/9/2009 Copy of Order fax to David Hooper, .25 hours for the amount of $66.25; 11/20/2009 Fax sent to chamber...with movant's list of witnesses and exhibits, .35 for the amount of $92.75; 10/30/2009 Fax to Attorney Vance Countryman a copy of Emergency Motion for a Protective Order Two copies, Order Setting Hearing on the Respondent's Emergency Motion for a Protective

        order two copies and a proof of filing, .20 hours for the amount of $53.00] These appear to be duties of support staff and shall be reduced to $75.00 per hour.

5.     The court held that the Debtors contributed to the additional expenses by refusing to comply with the basic requirements of the Bankruptcy Code and Rules and provide its list of creditors. This information was fundamental to the court's determination of the involuntary petition. Therefore, the court disallows the Applicant's fee request for the hearing scheduled on November 9, 2009 in the total amount of $1,367.40.

In conclusion the court finds that the Applicant did just what the court in *Miller*, advised against and submitted fee applications that were not reasonable. Based upon the above, the Applications are reduced as follows:

*REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK*

|  | Description: |
|---|---|
| $24,775.75 | Amount requested in Kirby Peterson, Case No. 09-20566 |
| – $1,935.00 | Disallowed fees for Frank Peasley. |
| – $ 450.00 | Disallowed fees for Greg Dyekeman. |
| – $3,442.00 | Disallowed fees for David Hooper. |
| – $152.00 | Adjustment for detail for duties that should have been attributed to a paralegal. Billed for the total amount of $212.00; court allows $60.00. |
| – $544.00 | Adjustment on April 21, 2010 invoice, deducting services attributed to paralegal (above) and allowing attorney rate of $225.00 per hour. |
| – $3,319.15 | Adjustment on March 9, 2009 invoice, deducting services attributed to paralegal (above) and allowing attorney rate of $225.00 per hour. |
| – $418.25. | Adjustment on February 23, 2010 invoice allowing attorney rate of $225.00 per hour. |
| – $450.25 | Adjustment on November 17, 2009 invoice allowing attorney rate of $225.00 per hour. |
| – $765.00 | Adjustment of November 5, 2009 invoice allowing attorney rate of $225.00 per hour. |
| $13,300.10 | Total allowable attorney fees and costs |

C.  Allocation of fees between petitioning creditors

In exercising its discretion whether to award fees and costs, the bankruptcy court may consider factors such as relative culpability among the petitioners, the motives or objective of individual petitioners in joining the involuntary petition, the reasonableness of the respective conduct of the debtors and petitioners, and other individualized factors. A bankruptcy court has discretion to hold all or some petitioners jointly or severally liable for costs and fees, to apportion liability according to petitioners' relative responsibility or culpability, or deny an award against some or all petitioners, depending on the totality of the circumstances.[14]

The Debtors did not waive their right to collect attorney fees and costs from any particular Petitioning Creditor. However, it is the court's finding that the petitioning creditors, Boardwalk Construction, Teton Orthopaedics, Bridgeport Financial, R.S. Benett Construction, B & G Plumbing, Jean Uselman were actively sought after to join the involuntary petition by the initial petitioning creditor WCB to meet the standing requirement. The court does not find that these petitioning creditors should be assessed the damages of attorney fees and costs and assesses the awarded attorney fees and costs only against WCB.

**Conclusion**

The court finds that the duplicate application for In re Melanie Peterson is denied in

---

[14] *Maple-Whitworth* at 746.

total. The court further finds that the application for In re Kirby Peterson is granted for the amount of $13,300.10 to be assessed against Wyoming Country Builders. This opinion constitutes the Court's findings of fact and conclusions of law. Separate orders shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this **3** day of May, 2011.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
Ken McCartney
Vance Countryman